Good morning, your honors. Dean Arnold for Mr. Campbell. Mr. Campbell alleges that his trial counsel, although the case did not go to trial, I will refer to his attorney at the district court level as trial counsel for simplicity. Can you pull that microphone up and point it to your mouth and try not to sway back and forth too much? Yes, your honor. The acoustics in this room are not very good. I understand. Mr. Campbell alleges that his trial counsel provided ineffective assistance of counsel by refusing to file a meritorious motion to suppress. The basis of his claim is that his attorney had determined that this federal court would apply California state law to the issue of the motion to suppress. And based upon that, his trial attorney refused to file the motion. Mr. Campbell alleges that he was prejudiced by that because California state law applies a different test to the motion to suppress than the Ninth Circuit does. Whose decision is it whether to file a motion to suppress? Is it the lawyer's decision? Is it the client's decision? I believe it's a combination. The attorney is obligated to do the proper research and to whether he wants to pursue that motion. In this case, had his trial attorney But it's ultimately the lawyer's call. The attorney It's not like a decision to plead guilty, you know, change of plea. There are certain decisions that are the client's, but tactical decisions are the lawyer's, right? And decision whether or not to file a motion to suppress strikes me as a lawyer's decision. Well, I certainly agree with the Court that trial decisions, tactical decisions are up to counsel. And an attorney can refuse to file a motion that he doesn't believe has merit. But once he determines the motion, he has to No, no. Yes. Of course, that goes without saying, not that it's wrong for you to mention it, but I'm just saying, it goes without saying that no lawyer may file anything he believes lacks merit. But within the range of things that have some merit, although varying degrees of likelihood of success, lawyers always make judgments based on other considerations. Like, you know, if I file a particular motion, this will delay the trial, and delaying the trial will extend my client's time in prison. I mean, this is just an example of the kind of things lawyers weigh. I'm not telling you anything new, right? No, I agree, Your Honor. And in this case, there is a motion to suppress possible, and then the government, as I understand it, makes it very clear that if the motion is filed, there'll be serious consequences because the charges will be escalated, right? I agree that the And that decision, the government's decision to make that threat, I mean, I use the word threat to suggest that. I'm trying not to use a pejorative. I'm just saying to create that situation was something that the lawyer had to take as a given. And it's not now being challenged. Nobody says the government misbehaved or anything like that, right? Well, the email, I believe the evidence is that it was sent. It was sent in 2009, shortly after Mr. Campbell's arrest. And the declarations of his trial counsel make clear that he wasn't aware of it. It never — he never took it into consideration in refusing to file the motion to suppress. Counsel, that's not how I read Mr. Brown's first declaration. I'm referring to ER 110 lines 15 through 19, in paragraph 7, in which he says, Mr. Campbell and I discussed the possibility of filing a motion to suppress, and I researched the issue. I determined and explained to Mr. Campbell that it would not be in his interest to file a motion to suppress because he was on probation at the time he was searched, and because the government may have filed additional charges potentially subjecting him to greater penalties. Isn't that what a Section 851 information does? Well, that reference by his trial counsel refers to additional criminal charges that he believed the government would file. You're drawing a distinction between a charge by indictment and a Section 851 charge by information which enhances the penalties that the client may be facing because of his recidivism. Well, an 851 information is not an additional criminal charge. It's a sentence enhancement. But he says subjecting him to greater penalties. It doesn't necessarily say it has to be a superseding indictment. Maybe I'm reading too much into his declaration, but now that I know that an email existed contemporaneous to the conversation he was having with Mr. Campbell, and that email makes it very clear that if you proceed, if you have the temerity to file a motion to suppress, we're going to file an 851 information and we will not withdraw it. Well, I Shouldn't, to follow up on Judge Kaczynski's question, shouldn't a competent criminal defense lawyer take that into account in terms of counseling his client as to whether or not he should run the gauntlet with a motion to suppress? And I believe Your Honor is raising our point. A competent counsel would have done that. Mr. Brown says that he did not. Well, that's not what he says in that declaration. I mean, you have — maybe you have a different reading of that declaration than I do, but I guess you could interpret it one of two ways. Well, that's his first declaration. And then prior to the government disclosing the email in the 2255 proceeding, he submitted a second declaration where he says he did not believe the government was going to file an 851 information. He didn't take it into consideration. That is his second declaration, which is — But did the district court have to believe that in the face of the contemporaneous email? Well, this is the trial attorney who's being accused of ineffective assistance of counsel. If he believed he was effective, he should have testified as much. So what — if it wasn't the 851 information, then what was — was it Mr. Brown, Gordon Brown, was that the — Yes, Your Honor. What was Mr. Brown referring to when he had this conversation with Mr. Campbell? Do we know? Well, I know, but it's not in evidence. It's not in the record. Okay. And I would point out that in his third declaration, which was provided after the government showed him the email, and I want to emphasize this point, Mr. Brown did not produce this email. The government had to show it to him, and he still does not remember receiving it. So if he doesn't remember receiving it, testify that it didn't enter his calculation about the motion to suppress. The fact that he does not remember receiving it certainly doesn't mean he didn't receive it and act on it. Well, I'm sorry, Your Honor, but in his second declaration, he says exactly that. He says that it didn't enter his mind. He didn't believe they were ever going to file an 851 information. Well, he may not, in fact, remember now as to why he did what he did, but, I mean, it's certainly possible to get an email, act on it, process it, formulate advice, advise the client, and then sometime later — how much later was the declaration prepared? Was months, years afterwards? The second and third ones would have been years after, yes. Years, not remember the triggering event. I don't know about you. It happens to me all the time. But if that's the reason that competent counsel refused to file a motion to suppress — I'm sorry? If competent counsel refused to file a motion to suppress based upon that 851 threat, he would remember it. Let's talk a little bit about the motion to suppress. And I wasn't as convinced as you seem to be that it would have been meritorious. It sounded pretty iffy to me, somewhat iffy. Well, I think that Howard — I'm sorry. Let me put it a different way. To me, it didn't seem like a slam dunk. Well, and — You know what I mean by slam dunk? The reason — A clear winner. I'm sorry? It didn't seem to me like a clear winner. Do you contend it was a clear winner, the motion to suppress? I think the first Howard factor dictates that it was a — it would have been a successful motion to suppress. The first Howard factor says, if they're going to do a motion — or if they're going to do a probation search on a residence that is not your reported address, you must do an investigation into whether you're living at your reported address and  at the place to be searched. The government concedes they did absolutely no investigation into his reported address. They watched this building for 20 minutes and arrested him. But he was, in fact, living at his other address. And had they done an investigation, they would have found out it supports the idea that he's, in fact, living here. Well, Mr. Campbell refutes that he was living there. He has evidence before the district court and this court that he was not. And the information that the government must base a probable cause determination on has to be done before they cross that threshold that day. It cannot be based upon all these arguments of what the government thinks there is or is not evidence of later on. What happens to the argument if it's not a slam dunk? Well, it doesn't have to be a slam dunk. It just has to be meritorious. That's the standard. But now I'm back to my 851 problem. If there is less than a slam dunk chance that he's going to win, the stakes of playing poker have now increased dramatically by a matter of years if he loses. So why is it ineffective assistance of counsel to say to the client, I think you better enter a plea on this one if you want to ever see your children again? Well, it's ineffective assistance because he didn't realize that it was a meritorious motion. He's basing it upon the wrong standard. And once he determined that it had merit or not, he was obligated to convey that information to Mr. Campbell, for Mr. Campbell to make that decision whether he wanted to take the risk. And the risk, you said years, would have been roughly from 12 years to 15 years versus zero years, because that motion to suppress But it's Mr. Campbell that has to do the time, not Mr. Brown. Exactly. And that's why Mr. Brown has to do the proper research under Strickland and its progeny, determine what the law is applicable to the motion to suppress, convey its merits to Mr. Campbell so Mr. Campbell makes that decision. But if the motion to suppress is not, in fact, a slam dunk, and if we accept the email as having established a realistic threat of increased penalties, as the first declaration references, why do we have to assume that Mr. Campbell wouldn't have said, I think I better take a plea here rather than run the risk? I believe the short answer to all of the Court's questions here today would have been resolved at an evidentiary hearing. You're asking questions about what did Mr. Brown mean in his declarations. Granted, they're a little bit inconsistent. He tries to explain those away, but an evidentiary hearing would explain that. What Mr. Campbell was conveyed and what decisions he would have made and why would be answered at an evidentiary hearing. And the only reason there wasn't one in this case is because the government at the last minute produced this email, said, we have, essentially their argument is, if we send out this email in every criminal case where the defendant has a prior conviction that would apply under Section 851, no matter what counsel does, it is not an effective assistance of counsel because it would be objectively reasonable to refuse it. Let me ask you as a criminal defense lawyer practicing in this district, is it the idle threats of filing 851 information that they have no intent of following through on? Well, and that's why competent counsel needs to be aware of that. You're not answering my question. Oh, well, maybe I misunderstood it. It's a very simple question based on your experience as an experienced defense lawyer. Does this U.S. Attorney's Office have a reputation for bluffing on 851 information? I believe that's changed over time. You think the answer is yes, they do? They're lightweights when it comes to making good on an 851? Well, those weren't my words. When I said it changed over time, I believe at one point in time, they would say this was their policy. Well, we're talking about this point in time. I understand that. But there's evidence in the record. So is the answer yes, at this point in time, their threats were good? At the time of the alleged error? Yes. I believe generally those threats were followed through on. But I also believe there's just down the hall in a separate courtroom, a similar threat was made. Defense counsel balked at it, filed a motion to suppress. The government did not file an 851. They actually offered a time-served plea offer. And that's what defense counsel's job is to do, to fight for their client, not roll over every time a threat is made. Because the Supreme Court has made clear the government can make threats and follow through with them if they want to. But that doesn't absolve defense counsel from doing its job. It's a bona fide threat with a client with this kind of a criminal record, is it not? Well, it's a threat. You need to evaluate it as counsel. But you have to provide Mr. Campbell all the information, tools to make the decision. Well, is Mr. Brown now saying I had no idea that my client had a long criminal history record? Well, I don't know that he had a long criminal history. He had one prior drug conviction. But I think Mr. Brown's statements stand for themselves in his declarations as to why he did certain things and what he didn't do in this case. And so I know I'm well over my time. I appreciate the additional questions. I would say at this point, I believe, and I hate to be repetitious, but to the extent the Court has questions or doesn't think I've satisfactorily answered factual questions, that is why an evidentiary hearing is necessary in this case. Thank you. Thank you. We'll hear from the governor. May it please the Court, my name is Mary Jean Chan and I represent the United States in this appeal. The declarations established that both by Campbell himself as well as his attorney Brown, that the reason for the advice of not filing the motion to suppress and instead taking the plea offer was that the government would sentence him to a longer sentence if he filed the motion to suppress. The government is sentencing him. I'm sorry, I'm sorry, not the government, that he would be subject to a much longer sentence. And that's what you pointed out, Your Honor. That is at Excerpt of Record 113. That's Campbell's own declaration for why. So Ms. Chan, why did it take two and a half years for the government to find the e-mail? So this isn't in the record, Your Honor, but I think this is an unfortunate matter of filing, file keeping. The case was transferred to three Sousas who handled, I'm sorry, Sousas are special assistant U.S. attorneys, who handled it sort of in Syriam. And the person who actually handled the case in the district court originally was an AUSA who then ultimately ended up searching through his personal e-mails, not personal, but I mean his work e-mails, his own e-mail account to find this. It wasn't actually in the hard copy file, which at that point He didn't print it out and put it in the file where it could have been more easily found. So I've spoken with the AUSA, Your Honor. He doesn't recollect, but he said that when the file had been closed already, because this was being looked at upon habeas, it had already been closed and processed so that somebody in records keeping may have purged the file of some of these e-mails if it hadn't been put in correspondence. So it's not clear exactly why, but it was turned to the defense prior to the evidentiary hearing. There's no question that it was authentic. In fact, opposing counsel just admitted that it was sent. There's no question about that. And the district court didn't abuse its discretion by accepting it and considering it. In light of the 851, which would have ‑‑ which meant that if Mr. Campbell had filed the motion to suppress and had not won, he would have been subject to a 25‑year mandatory minimum because the plea agreement dismissed count one, which had a higher mandatory minimum. What would have been the outcome had the motion to suppress been successful? Had it been successful, then he would have walked away. I believe we would have had to dismiss the charges, Your Honor, because all the evidence was found during the probation search. The petitioner's claim is that he was entitled to have his lawyer give him an accurate assessment of his chances of success on the motion to suppress, which he would then weigh against the risk of going forward with the motion, including the possibility of an 851 enhancement. And why isn't that right? Why isn't defense counsel right? Well, there are a couple of ‑‑ It's the kind of decision that a lawyer can't make on his own, no matter how wise it seems. Well, Your Honor, it doesn't say that ‑‑ none of the declarations indicate that Mr. Brown made this decision not to file the motion to suppress on his own, but that he talked to his client and then advised him strongly not to because of the sentencing consequences. Well, let me ‑‑ isn't it important, though, that Campbell be advised correctly about what the chances of success are on the motion? I'm not sure that he wasn't, Your Honor. He was basically told that the attorney ‑‑ Well, if we're not sure, then maybe we need an evidentiary hearing. Your Honor, I don't ‑‑ If even you are not sure, then it seems to me we do need an evidentiary hearing, right? That was in our tool. If it matters. I don't think it matters. I think the district court was right in saying that the record showed conclusively ‑‑ So your position is defense counsel has a meritorious motion to suppress that has, let's say, just give it a number for hypothetical purposes, 75 percent chance of success. You know, far more likely than not to succeed. And is it the position of the United States that the lawyer, when discussing with the client whether to accept a plea deal, is not required to give an accurate assessment of the likelihood of success of a motion to suppress, which in your words would have allowed him to walk free? The question, Your Honor, I think ‑‑ It's sort of an uncommunicative question. Did you follow it? I followed the question, and I'd like to answer it, and I hope I answered in the order that's acceptable to the court, which is that ‑‑ A yes or no would be a good start. Pardon? A yes or no would be a good start. Is it the government's position that a lawyer may make this decision and fail to explain to his client the likelihood of success of the motion in giving advice whether or not to accept the plea bargain? No, Your Honor. I think that the attorney ‑‑ No, so you think the lawyer, just to understand the question, your no means the lawyer may not fail to explain to his client the likelihood of success of this motion to suppress, right? No. What I'm saying, Your Honor, is that if the lawyer gives an assessment, and it's ‑‑ there's no actual sort of statistical probability that's accurate. There's a wide range of professional competence, and different attorneys may assess the likelihood of the merits of a motion to suppress differently. But so that if they, for example, if an attorney doesn't necessarily say 75 percent and he assesses it at 60 percent or 50 percent, that that's not deficient performance in advising his attorney. But you agree that he's required to make an assessment as to the likelihood of success and inform his client. Whatever his assessment is of the likelihood of success in advising the client whether to accept a plea offer, the defense lawyer is required to let the client know what the likelihood of success is of the motion to suppress, because it's a get‑out‑of‑jail‑free card. It's not something that way. You said this is evidence. It might come in a trial. It might make a difference. You know, we don't know how to play with a jury or all that. You have said if this motion is successful, the guy walks, right? Yes, Your Honor, but in this case So, again, I would like to just make sure I understand your answer. Is the lawyer required to give an accurate assessment of the likelihood of success in advising the client whether or not to accept a plea bargain? Yes, Your Honor. Okay. But I would say that Okay. So if that's the case, is there not doubt in this case, is there not a dispute as to whether or not the lawyer did this? No, Your Honor. Okay. Explain to me. Well, first You agree that if there is a dispute, we'd have to go back to an evidentiary hearing, right? If there's a dispute, if there's uncertainty on the question of whether the lawyer gave him the assessment, since you've said this is something the lawyer is required to do, we'd have to send it back, right? No, Your Honor, because I think that the question is whether the objective advice, the advice he gave for him to forego the motion to suppress and take the plea deal that halved his exposure, his mandatory minimum exposure, was objectively reasonable and competent advice. On this record, there's no question that it was, and that's what the district courts found. Even if his, the basis for his assessment of the risk was faulty, even though he was misunderstanding the law and didn't understand what the real risk was, it wasn't, it was fine for him to tell a client to accept the plea deal because of the additional enhancement you might face if you don't? In this case, yes, Your Honor, because of the penalties, because of what was at stake there, which was that it's not a matter of, the only question was whether it was a slam dunk. First of all, I'd like to take issue with the sort of characterization of his understanding of the California law as wrong. It's not clear from the declaration what he means when he says that California law applies. It certainly applies to how you And it's not clear that that was the basis for his strategic advice to forego the motion to suppress. In fact, the declarations all establish that what he says, if you look at all the times when he says because, I've counseled him to because, or my attorney counseled me because, it was because I would be exposing myself to a great deal more of a sentence. And it was so much, in this particular case, the difference, it was 15 years more by not taking the deal and taking the motion to suppress, that if his assessment was a little bit higher, it was 80 percent versus 75 percent, that's not the difference. The question is, as you mentioned earlier, whether this was a slam dunk, because if it wasn't, it was objectively competent advice to give to the defendant that he should forego the motion to suppress and take the deal. And that's what the district court found, that conclusively on this record, this was objective advice. The Supreme Court said in Richter that the question is whether the advice is objective. What the defendant wants this Court to do is to say that even if there's a very good strategic reason for advice, which in this case was the 851, sorry, 851 information, if there's some ingredient in that that might be off, it's not decisive, it's not particularly important, none of the declarations say that that's why the recommendation was made. If you look at the declarations on the discussion of the merits at ER 69, it says that he tells Campbell about the merits and he discussed the merits of the motion to suppress, but doesn't say that's why he made the recommendation for him not to file the motion to suppress as opposed to taking the deal. When he does talk about that, when Brown talks about the recommendation, he repeatedly says, he says that I discussed the possibility of filing a motion to suppress. I told him it was not in his interest because he was on probation at the time he was searched and because the government may file enhancing charges. And that's at ER 110. Campbell agrees at ER 113. He strongly advised me that it would not be in my best interest to file a motion to suppress as the government and the Court would sentence me to a longer prison term than I was already facing. It's clear conclusively on this record that what Mr. Brown advised was competent advice. And it was – it was competent because, A, he was facing more than twice the sentence, mandatory minimum, not just sort of under the guidelines, not discretionarily, but a mandatory minimum of twice as long as what he would if he filed – didn't file the motion to suppress. And, second, because it wasn't clearly meritorious, his motion to suppress. Under probable cause, we have – it's a fact-specific inquiry, and there was a lot to say that they had probable cause before they went into the apartment and searched it. Specifically, Mr. Campbell specifically said, what can I do to work this off? He took ownership for the apartment. He said what was inside and described the contents of the house. All – all factors that would go into probable cause, all suggesting that this was at least not a clearly meritorious motion, and so the assessment of risk. Thank you. Thank you, Your Honor. We ask for an affirmance. Okay. I don't remember. Did you have any time left? I think you were in negative numbers. Would you like to take a – You have a minute. Thanks. The first point I want to make is counsel is wrong when she says Mr. Campbell is facing 25-year minimum mandatory sentence. It is in the record that he was sentenced to 5 plus 5. If they filed the 851, it would have been a 15-year minimum mandatory, not 25. With regard to all of their arguments, all I hear the government saying is, it's uncertain about this. It's uncertain what this person meant. It's uncertain why Mr. Brown did or did not do something. To me, that means this court should remand this case for an evidentiary hearing to the district court. Lastly, with regard to this email, we spent a lot of time talking about the email. In our briefs, we talk about the proper test that the Supreme Court has set forth, and when counsel doesn't do a proper investigation to the facts and the law and violates the justice which is cited in our brief, it doesn't matter whether the government sent the email or not because he cannot make an informed decision, and that's set forth in Wiggins, Hittins, Williams, as far back as Kimmelman. Thank you, Your Honor. I appreciate the extra time. Thank you. The case is argued. We'll stand for a minute. We'll take a five-minute recess.
judges: Rayes, Kozinski, Tallman